UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DANIEL R. POST,**

    **Plaintiff,**

    v.                                    Case No. 19-CV-508

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Daniel R. Post seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Post filed an application for a period of disability and disability insurance benefits, alleging disability beginning on September 23, 2013. (Tr. 171.) Post alleged disability due to chronic back pain/spinal impairments and depression. (Tr. 192.) Post's application was denied initially and upon reconsideration. (Tr. 19.) Post filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on March 20, 2018. (Tr. 35–70.) Post testified at the hearing, as did a vocational expert ("VE"). (*Id.*)

In a written decision issued June 26, 2018, the ALJ found that Post had the severe impairments of disorders of the spine status post multiple surgeries and depression. (Tr. 21.)

The ALJ found that Post had the non-severe impairments of hypertension and obesity. (Tr. 21–22.) The ALJ further found that Post did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 22–23.) The ALJ found that Post had the residual functional capacity ("RFC")

> to perform sedentary work, as defined in 20 CFR 404.1567(a), that allowed him to alternate between sitting and standing at will provided he is not off task more than five percent of the work period with no more than occasional stooping and climbing of ramps and stairs; and no climbing ladders, ropes, and scaffolding, use of moving machinery, exposure to unprotected heights, crouching, crawling, kneeling or concentrated exposure to excessive vibration. He is also limited to simple, routine, and repetitive tasks, performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, few, if any work place changes, and only occasional contact with the public, co-workers and supervisors.

(Tr. 23.)

The ALJ found that Post was unable to perform any past relevant work. (Tr. 28.) The ALJ further found that considering Post's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 28.) The ALJ therefore found Post not disabled from his alleged onset date until the date of the decision. (Tr. 29.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1–7.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Post argues that the ALJ applied the incorrect legal standards and failed to support his decision with substantial evidence for two reasons: (1) the RFC improperly included a requirement that Post not be off task more than 5% of the workday while exercising a sit/stand option that is entirely arbitrary and unexplained, and (2) the ALJ improperly evaluated Post's statements regarding his symptoms and limitations. (Plaintiff's Br., Docket # 11.) I will address each in turn.

#### 2.1 Sit/Stand Option and Off-Task Limitation

Post faults the ALJ's finding that he could perform sedentary work "that allowed him to alternate between sitting and standing at will provided he is not off task more than five

percent of the work period." (Plaintiff's Br. at 9–13.) Post argues that this imposes an "artificial cap" on the exercise of the sit/stand option that is arbitrary and unsupported, and is not properly included in the RFC because it is not a statement of Post's actual functional abilities. (*Id.*) The Commissioner responds that the ALJ did not place a cap on Post's sit/stand limitation, but merely made an "allowance" that Post may be off-task up to 5% of the time due to the sit/stand option—a mere "clarifi[cation] that switching between sitting and standing would not cause Plaintiff to be off-task more than 5% of the day." (Commissioner's Br. at 13, Docket # 18.)

The RFC is an assessment of an individual's maximum ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. In assessing the RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments. *Id.* When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the ALJ must consider the individual to have no limitation or restriction with respect to that functional capacity. *Id.* The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). *Id.*

Here, after summarizing Post's medical history, the ALJ explained that due to Post's combination of severe and non-severe physical impairments, Post was limited to sedentary work. (Tr. 25.) The ALJ then stated that "[t]o account for his reported limited sitting, standing, and walking tolerances, the undersigned finds he must be allowed to alternate between sitting and standing at will provided he is not off task more than five percent of the

4

work period." (*Id.*) The ALJ further explained that Post reported he was capable of standing and sitting for thirty minutes and walking one hour at a time in January and September 2016, as well as standing for twenty to thirty minutes at one time in March 2017, "consistent with the ability to work at a sedentary position with a sit/stand option." (Tr. 26 (citing Exs. 7E-6, 9, 7F-3, 11F-51).)

The ALJ failed to account for significant evidence that Post's postural limitations would require him to be off-task far more than 5% of the time. Post reported that he could not do *anything*—sitting or standing—for more than one hour before he needed to lie down or sit with pillows and rest his back. (Tr. 200, 205, 208, 221, 226, 228, 229.) He also explained that he could not even stay on the couch with pillows behind his back and under his legs without taking breaks to get up and move around. (Tr. 207.) He indicated that he spends a total of half the day lying on the couch with pillows propping him up and could spend no more than about two hours a day sitting and two hours standing, with breaks. (Tr. 229.) A person who can sit or stand for only four hours a day and must otherwise lie down would necessarily be off-task far more than 5% of the day. An ALJ who includes an off-task percentage in the RFC must explain why he rejected evidence that a claimant would be off-task a greater percentage of time than the ALJ found. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). The failure to do so in this case warrants remand.

The Commissioner argues that this was harmless even if erroneous because the VE explained that he eliminated any jobs that "could not be done sit/stand at will" when calculating his job numbers—not simply those jobs compatible with a maximum allowance of 5% off-task. (Commissioner's Br. at 13–16.) This argument seems to miss the point, which is that there is evidence that even some jobs with a sit/stand option would be beyond Post's

abilities because he cannot sit *or* stand for a significant part of the day. Because the ALJ failed to explain why he did not credit that evidence in determining an appropriate off-task limitation in Post's RFC, and a higher off-task percentage could conceivably have changed the outcome, the decision must be reversed and remanded.

        2.2     Evaluation of Subjective Complaints

Relatedly, Post argues that the ALJ erred in discounting Post's allegations of disabling symptoms as not fully consistent with his daily activities. I agree.

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the alleged limitations are not substantiated by the medical signs and laboratory findings of record, the ALJ considers whether the statements are consistent with the record of as a whole considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts

"merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Id.* at 413–14 (internal quotation marks and citations omitted).

In his decision, the ALJ found that Post's medically determinable impairments could reasonably be expected to produce symptoms of the type alleged. (Tr. 26.) However, the ALJ found Post's statements concerning the intensity, persistence, and limiting effects of those symptoms not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) Specifically, the ALJ explained that although Post had undergone four operations and a spinal cord stimulator trial, treatment records indicated that he never had more than moderate functional impairment and that medication allowed him to maintain his activities of daily living and take care of his young adopted children. (*Id.*) The ALJ stated that Post's "ability to be a stay-at-home dad to his four adopted children, as well as two one-year-olds as a foster parent in August 2017 and guardianship of his niece in November 2017 suggests he remains more capable than his allegations of disabling symptoms would indicate." (*Id.*) The ALJ further stated that Post "has remained capable of caring for young children (four adopted children, his niece whom he has guardianship of, and two one year old foster twins), preparing meals, cleaning, mowing the grass, driving, shopping, managing money, fishing, playing video games, going to church, spending time with his family, and following instructions, suggesting better functioning than his allegations of disabling symptoms would indicate." (*Id.* (citing Ex. 7F-4–5).) The ALJ also pointed to records indicating that Post maintained normal coordination, balance, sensation, strength, and gait, with moderate or less reduced range of

7

motion of his lumbar spine during objective evaluations; Post's self-reported ability to lift thirty pounds, stand and sit for twenty to thirty minutes, and walk for an hour, "consistent with the ability to work at a sedentary position with a sit/stand option"; and Post's claim to have received pain relief from surgery and his spinal cord stimulator, describing his back pain as mild to moderate in severity in October 2017. (*Id.* (citing Ex. 12F-1, 5).)

The ALJ's evaluation of Post's allegations is patently wrong and requires remand. The ALJ discounted Post's allegations of disabling pain largely because he was capable of childcare, but did not acknowledge Post's stated limitations in performing childcare activities. The ALJ entirely ignored Post's repeated statements that he was typically alone with all his children for only a few hours of the day and spent a significant portion of that time lying on the couch, had difficulty caring for them, and tended to their needs only in short bursts of activity between which he would sit or lie on the couch with pillows supporting his back and legs to relieve the pain. (Disability Report of Nov. 5, 2015, Tr. 191–99; Adult Function Report of Nov. 23, 2015, Tr. 200–10; Adult Function Report of Sept. 1, 2016, Tr. 221–31; Hearing Testimony, Tr. 43–55.) These allegations are supported by Post's statements to providers in the medical record that he had difficulty and pain when caring for his children (Tr. 298, 305, 314, 427–28, 467, 567), required multiple narcotic medications in increasing doses in order to care for them (Tr. 268, 272, 275, 279, 283, 287, 290, 308, 311, 346, 401, 467, 567, 570), missed opportunities to interact with them because of increased pain (Tr. 427–28), was unable to do more than sit and watch television with them (Tr. 431), had to pace himself throughout the day (*id.*), and had to limit how engaged he was in activities (*id.*). In other words, the ALJ found inconsistency between Post's allegations of disabling pain and his ability to perform childcare by ignoring a vast swath of evidence that Post was, in fact, quite limited in his

8

childcare activities. *See Moss v.* Astrue, 555 F.3d 556, 562 (7th Cir. 2009) (ALJ's assessment of subjective complaints based on performance of household duties improperly disregarded evidence of claimant's limitations in performing those activities).

The Commissioner urges me to consider Post's decision to adopt several young children, foster two more, and assume guardianship of yet another one during the period of alleged disability as supporting the ALJ's decision to discredit Post's allegations of disabling symptoms. (Commissioner's Br. at 1, 9–10, 11.) But the ALJ did not point to the decision to assume care of these children as a factor in his consistency determination; he referred only to Post's activities caring for them. I may not look for support for the ALJ's decision outside the rationales the ALJ provided. *See Shauger*, 675 F.3d at 697 (citing *Chenery Corp.*, 318 U.S. at 93–95 (1943); *Campbell*, 627 F.3d at 307).

There are other errors in the ALJ's evaluation of Post's alleged symptoms, but because the case is being remanded on other grounds, I comment on them only briefly to provide guidance on remand. The ALJ improperly cherry-picks records of Post's pain relief after surgery and his spinal cord stimulator implant, as well as his description of his back pain as mild to moderate in severity in October 2017, without acknowledging extensive evidence that his pain became intolerable again after each period of moderate improvement and without commenting on the effect of the alleged improvement on Post's functional capabilities. On remand, the ALJ must evaluate Post's allegations in light of the record as a whole and support his evaluation of those allegations with substantial evidence from the record.

## CONCLUSION

The ALJ erred in failing to support his off-task limitation with substantial evidence from the record, and in discrediting Post's subjective complaints as inconsistent with his

9

activities of daily living. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to 42 U.S.C. § 405(g), sentence four.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of February, 2020.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge